IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mary Shepard, | ) | C/A No.: 5:20-4206-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| Commissioner of the Social Security | ) | |
| Administration, [1] | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

her claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the

Act"). Having carefully considered the parties' submissions and the applicable law, the court

affirms the Commissioner's decision for the reasons discussed herein.

I.    Relevant Background

A.    Procedural History

On February 4, 2019, Plaintiff protectively filed for SSI alleging she became disabled on

February 4, 2019. Tr. 204–206. After being denied initially, Tr. 81, and upon reconsideration, Tr.

97, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 117–19. The

ALJ conducted a hearing on May 13, 2020. Tr. 32. The ALJ denied Plaintiff's claim in a decision

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for
Andrew Saul as Defendant in this action.

dated May 28, 2020. Tr. 13–26. Plaintiff requested review of this decision from the Appeals Council. Tr. 162–63. On November 9, 2020, the Appeals Council denied the request, Tr. 1–6, making the ALJ's May 28, 2020 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed December 4, 2020. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born on June 26, 1977 and was  41 years old at the time of her alleged onset date of February 4, 2019. Tr.  204. In her February 21, 2019 Disability Report-Adult form, Plaintiff indicated she completed 10th grade in 1995, and she attended special education classes. Tr. 209. Plaintiff stated she did not complete any type of specialized hob training. *Id.* Plaintiff further indicated that, in her past relevant work ("PRW"), she worked in a warehouse from Winter 2013 to July 2014. Tr. 210. Plaintiff indicated she stopped working on July 1, 2014 because of her conditions which she identified as "seizures, diabetic nerve pain, tumor in left breast, cyst in right arm, pinched nerve in lower back, can't read, can't write, [and] acid reflux." Tr. 208. Plaintiff indicated that she was 4'11" tall, weighed 147 pounds, and her conditions caused her pain or other symptoms. *Id.*

In two separate Disability Report-Appeals dated July 15, 2019, Tr. 217, and November 26, 2019, Tr. 225, Plaintiff indicated she did not have a change in her medical condition. Plaintiff also indicated there has not been any changes to her daily activities due to her physical and mental conditions. Tr. 219, 227.

C.    Administrative Proceedings

On May 13, 2010, Plaintiff appeared with counsel at an administrative hearing in Greenville, South Carolina. Tr. 32.  Plaintiff  appeared via telephone and testified regarding her

application for SSI. Tr. 32–67. Vocational Expert ("VE") Marilyn Stroud also appeared via telephone and testified. *Id.* At the start of the haring the ALJ questioned Plaintiff's counsel about his request for a consultive exam with intellectual testing for Plaintiff. Tr. 32–33. Plaintiff's counsel indicated an exam was done in 2010 and covered the same issues he raised in this request and asked that the 2010 exam be made an exhibit in Plaintiff's current claim. Tr. 32. After reviewing the 2010 examination and testing, the ALJ granted the request and the 2010 exam was made an exhibit to Plaintiff's application. Tr. 33.

1. Plaintiff's Testimony

In response to questions from her attorney, Plaintiff stated she was 43 years old, was born on June 26, 1977, and she confirmed her current address. Tr. 39. Plaintiff testified she got a learner's permit when she was 15 but she started having seizures when she was 17 and her mother would not let her get her driver's license. Tr. 39–40. Plaintiff stated she is 5 feet tall and her current weight is 154 pounds and her weight does not have any impact on her health. Tr. 40. Plaintiff testified she is not married and has two adult children. Tr. 40–41. Plaintiff said she lives in a mobile home with her 21-year-old son who takes care of her. Tr. 41. Plaintiff testified she dropped out of school in the 10th grade and prior to dropping out she was in special education classes and she struggled with math and reading. *Id.* Plaintiff said her math skills are not good and she never had a bank account. Tr. 41–42. Plaintiff testified her reading is "not good at all" and she can read little children's books. Tr. 42. Plaintiff said she never got her GED, nor did she do any additional education or training. *Id.* Plaintiff testified when she got her learner's permit a worker with the Department of Motor Vehicles read the questions to her, and she did the best she could at writing the answers down. *Id*. Plaintiff said she passed the test the second time she took it. Tr. 43. Plaintiff testified she has not worked since she filed her application in March 2019 and she did not

3

have any substantial gainful employment. *Id.* Plaintiff said she has physical pain and discomfort in her feet, legs, and back. Tr. 43–44. Plaintiff testified there are times she cannot feel her feet and legs and then she falls. Tr. 44. Plaintiff said she believes this is related to her neuropathy. *Id.* Plaintiff testified she is not sure what is going on with her back and she goes back to the doctor in June. *Id.* In response to questions about her neck, Plaintiff stated her doctor took x-rays at her most recent visit and they are going to discuss the x-rays when she goes back. *Id.* Plaintiff testified her hands go numb and she cannot feel them and she cannot write and she drops stuff. Tr. 45. Plaintiff stated sometimes she cannot move her left shoulder. *Id.* Plaintiff testified she is in pain every day. *Id.* Plaintiff said she uses a cane to help her walk so she does not fall. *Id.* Plaintiff testified she started using a cane six months ago after she fell coming out of church and skinned her knees. *Id.* Plaintiff said her doctor told her to start using a cane so she does not fall. *Id.* Plaintiff testified she will try to walk and her feet go numb and she cannot feel them. Tr. 46. Plaintiff stated she also has issues with balance when standing and she can stand about 5–10 minutes before her feet and legs "don't want to keep me standing up" and she has to get off her feet. *Id.* Plaintiff testified she sometimes has issues with sitting because her back, neck, and legs hurt. Tr. 46–47. Plaintiff said she can sit 10–20 minutes before she has to get up. Tr. 46. Plaintiff said she has some issues breathing and her doctor told her she has COPD and she was instructed to use an inhaler every morning. Tr. 47. Plaintiff testified she gets short of breath when walking, and sometimes when she is sitting still. *Id.* Plaintiff said she smokes a pack of cigarettes a day. Tr. 48. Plaintiff testified she is not currently seeing a neurologist for her seizures, nor is she taking any medication. *Id.* Plaintiff said her doctor prescribed her Keppra for her seizures three months ago but she stopped taking it because of the side effects. Tr. 48–49. Plaintiff testified she last had a seizure approximately a year ago, and she has not taken her medication "for a good while." Tr. 49. Plaintiff

4

said she uses marijuana twice a week for the pain. Tr. 50. Plaintiff testified her diabetes is not under control and she cannot keep her blood sugar regulated. *Id.* Plaintiff stated she takes oral medication for her diabetes. *Id.* Plaintiff said she believes her neuropathy is attributable to her diabetes. *Id.* Plaintiff testified she has difficulty walking and she can walk 10 to 15 steps and then she has to rest. Tr. 50–51. Plaintiff stated she take Gabapentin for her neuropathy, 100 mg in the morning and 300 mg at night, because it makes her sleepy, and she also props her feet up and rubs them to stop them from hurting. Tr. 51. Plaintiff says she reclines and elevates her feet four or five times a day for about 20 minutes at a time. Tr. 50–51. Plaintiff stated she has difficulty lifting a five-pound bag of sugar, and she needs two hands to lift a gallon of milk. Tr. 52. Plaintiff said other than the Gabapentin making her sleepy, she does not have any other side effects from her medications. *Id.* Plaintiff testified she has difficulty going to sleep at night, and she wakes up two to three times because her "feet will be hurting bad, so it will wake me up." *Id.* Plaintiff said she sleeps about five hours a night, and she does not nap during the day. Tr. 53. Plaintiff testified she does not have any hobbies, and in a typical day, she gets up, takes her medication, and watches tv. *Id.* Plaintiff said she tries to help her son around the house, but her son does all the housework, and sweeps and mops because she cannot stand up to do it. *Id.* Plaintiff stated her son helps her get out of bed as sometimes she will "hit the floor" due to the numbness in her feet. *Id.* Plaintiff testified she is able to dress herself although she has issues with buttons because of the numbness in her hands. Tr. 53–54. Plaintiff said she does not have any issues bathing herself. Tr. 54. Plaintiff stated she can pull a chair to the sink and wash dishes but she sometimes drops them when her hands get numb. *Id.* Plaintiff testified she does not do any other household chores. Tr. 55. Plaintiff said her son takes her grocery shopping and he pushes her in a wheelchair around the store. *Id.* Plaintiff stated she does some cooking. Tr. 56. Plaintiff said she does not visit with friends, or go

out to eat, or use a computer. *Id.* Plaintiff said she has a cell phone but she does not text, only accepts calls. *Id.* Plaintiff stated she can text if she has to, but she has difficulty spelling words, and she will send something that does not make sense. Tr. 57. Plaintiff testified she has difficulty using her fingers to type and since she has become diabetic, everything is blurry and the letters are harder to see. Tr. 56–57.

In response to the ALJ, Plaintiff testified she does not have any activities she enjoys doing and she does not go out. Tr. 57. Plaintiff also confirmed that she has not had a seizure in almost a year and she is not taking her seizure medication. Tr. 58. Plaintiff stated her son does not work outside the house, and her sister pays all her bills but Plaintiff gets food stamps for her and her son. *Id.*

2.  VE's Testimony

The VE agreed with the ALJ that Plaintiff did not have any substantial, gainful work activity. Tr. 59–60.  The ALJ asked the VE to assume an individual of Plaintiff's age, education, and the ALJ's vocational profile determination with the following limitations:

> Further assume this individual is limited to less than full range of light work. That is to say, this individual could lift and/or carry 20 pounds occasionally, 10 pounds frequently. This person could sit, stand, and/or walk for six hours each in an eight hour day, and push and pull as much as she can lift and/or carry except this individual would be limited to occasional use of bilateral foot controls, and this individual could frequently operate hand controls with the left hand. This individual could frequently reach overhead with her left upper extremity and frequently reach otherwise with the left upper extremity. This individual should never climb ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, crouch, and crawl. This individual can frequently be in an environment with unprotected heights, moving, mechanical parts. This hypothetical individual can sustain concentration, persistence, and pace sufficient to perform simple, routine tasks in two-hour increments; have no more than a GED reasoning level of two; and this individual can, with regards to use of judgement, this individual can perform simple, work-related decisions.

Tr. 60. The ALJ asked the VE to provide examples of work, if any, the hypothetical individual could perform. Tr. 61. The VE responded that the hypothetical person could perform the following: laundry classifier, DOT code 361.687-014, SVP 2, unskilled, light, approximately 34,000 jobs in the national economy; small parts assembler, DOT code 706.684-022, SVP 2, unskilled, light, approximately 20,000 jobs in the national economy; router, DOT code 222.587-038, SVP 2, unskilled, light, approximately 4,700 jobs in national academy. Tr. 61–62. The VE confirmed her testimony was consistent with the DOT although bilateral foot control or overhand reach are not defined in the DOT. Tr. 62. The VE stated "I do review the job descriptions provided within the DOT and base testimony on the job descriptions as well as professional experience and observation of the job being performed." *Id.*

The ALJ then asked the VE to assume this hypothetical person was additionally limited by being off task 15% of the time in an 8 hour day in addition to normal breaks. Tr. 63. The ALJ asked if this individual could perform any work. *Id.* The VE testified this individual could not perform any work. *Id.* The ALJ asked if this testimony was consistent with the DOT, and the VE replied that it was not inconsistent with the DOT, "however, [time off task] is not defined within the DOT and would be based on professional experience." *Id.*

Plaintiff's counsel asked the VE to consider the individual in hypothetical one, and include limitations to the hands "bilaterally to occasional handling, fingering, and feeling." Tr. 63–64. Counsel asked what impact these limitations have on the jobs the VE identified in response to hypothetical one. Tr. 64. The VE stated the positions she identified could not be performed because they require frequent handling, fingering, and feeling. *Id.* Counsel then asked whether there was any work this individual could perform. *Id.* After confirming with the ALJ that there were no limitations on working with the public, the VE identified the following: counter clerk,

7

DOT code 249.366-010, SVP 2, unskilled, light, approximately 2,000 jobs in the national economy; usher, DOT code 344.677-014, SVP 2, light, approximately 11,000 jobs in the national economy; cotton classer aide, DOT code 429.587-010, SVP 2, light, approximately 8,000 jobs in the national economy. *Id.* Counsel then asked whether those jobs were in the public or private sector. Tr. 65. After seeking additional clarification, the VE stated the first two jobs are in the private sector, and the last job could be in either. *Id*. Counsel then asked if those jobs could be performed by an individual who uses a cane, and the VE replied that these jobs could not because an individual would have to be able to walk 10 feet without a cane. Tr. 65–66. Counsel stated he did not have any further questions. Tr. 66. With nothing further, the hearing closed. *Id.*

## II.    Discussion

### A.    The ALJ's Findings

In his May 28, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since February 4, 2019, the application date (20 CFR 416.971 et seq.).

2.    The claimant has the following severe impairments: lumbar and cervical spondylosis, diabetes mellitus with peripheral neuropathy, left bicipital tendinitis, obesity, reading disability with learning disorder and anxiety (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). In particular, the claimant can lift or carry up to 20 pounds occasionally

and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. She can operate hand controls with the left hand frequently and can operate foot controls bilaterally occasionally. She can frequently reach overhead to the left and frequently perform all other reaching to the left. The claimant can never climb ladders, ropes, or scaffolds, balance frequently, stoop frequently, kneel frequently, crouch frequently, and crawl frequently. The claimant can work at unprotected heights frequently, and with moving mechanical parts frequently. She can sustain concentration, persistence, and pace sufficient to perform simple, routine tasks in two hour increments at no more than a GED reasoning level of 2. She is able to perform simple work-related decisions.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on June 26, 1977 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since February 4, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 13–26.

9

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims). An examiner

must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

the impairment prevents the claimant from performing specific jobs that exist in significant

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or
"Listed impairments") the Agency considers disabling without the need to assess whether there
are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R.
Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925.
If the medical evidence shows a claimant meets or equals all criteria of any of the listed
impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R.
§ 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his
impairments match several specific criteria or be "at least equal in severity and duration to [those]
criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*,
482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling
at Step 3).

numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ failed to identify and resolve conflicts between the DOT and VE testimony and failed to properly account for Plaintiff's moderate limitations in concentration, persistence and/or pace ("CPP") in his RFC.  ECF No. 18 at 3–10.

12

1.   Conflict between DOT and VE testimony

Plaintiff alleges the VE's testimony was flawed because it created a conflict with the DOT that was left unresolved by the ALJ. ECF No. 18 at 3–5.

The Commissioner contends there was not an apparent conflict between the RFC and the VE testimony, and  therefore the ALJ reasonably relied upon the VE's testimony. ECF No. 20 at 7–8.

At Step Five of the sequential evaluation process the Commissioner has the burden to prove that a claimant can perform other work in the national economy given the claimant's RFC and vocational factors. 20 C.F.R. § 416.960(c)(2). Here, the ALJ determined Plaintiff had the RFC to perform light work limited to "simple, routine tasks in two hour increments at no more than a GED reasoning level of 2 [and] perform simple work-related decisions."  Tr. 18. The ALJ relied on the VE's testimony that given these limitations Plaintiff would be capable of performing the representative occupations of (1) laundry classifier,  DOT No. 361.687-014, small parts assembler, DOT No. 706.684-022, and (3) router, DOT No. 222.587-038. Tr.  25.[3]

SSR 00-4p provides that occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT." 2000 WL 1898704 at *2. The Ruling further notes:

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

---

[3] The jobs identified by the VE have a GED reasoning level of 2.  GED Reasoning Level 2 is defined by the DOT: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."  *See*  DOT, App. C, 1991 WL 688702.

SSR 00-4p, 2000 WL 1898704 at *4.

Plaintiff asserts the ALJ failed to identify or address the apparent conflict between the ALJ's RFC and the VE's opinion that although Plaintiff was limited to simple, routine tasks, she could perform the cited jobs that had a general educational development ("GED") reasoning level of 2. ECF No. 18 at 3–5. Plaintiff cites to *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. 2016), and argues the ALJ must resolve the conflict between a claimant limited to simple, routine tasks and GED reasoning level two jobs. *Id.* at 3–4. Plaintiff also cites to *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015) and argues the ALJ is required to independently–identify conflicts between the VE testimony and the DOT and may not rely on the VE's testimony that no conflict exists. *Id.* at 5.

Plaintiff's reliance on the holding in *Henderson* is misplaced. In *Henderson*, the court acknowledged that "there is an apparent conflict between an RFC that limits [a claimant] to one-to-two step instructions and GED reasoning Code 2, which requires the ability to understand detailed instructions." Accordingly, the court found the ALJ failed to meet his burden at step five because the VE's testimony did not provide substantial evidence to show that the plaintiff's RFC would allow him to perform work that existed in significant numbers. *Id.* at 277. The instant case, however, differs from *Henderson* in that the ALJ's RFC did not limit Plaintiff to one- or two-step instructions.

The Fourth Circuit addressed the issue raised by Plaintiff in a published panel decision, *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. Oct. 24, 2019). In *Lawrence*, the Fourth Circuit found there was no apparent conflict between GED reasoning level two jobs and an RFC of "simple, routine, repetitive tasks of unskilled work." *Id*. The court explained since there was no

apparent conflict to identify and resolve, the ALJ did not commit reversible error. *Id.* at 143–44.

In this case, the VE identified jobs with a GED reasoning level of two in response to a hypothetical limiting Plaintiff to an RFC of "simple, routine tasks." Because there was not a conflict between the RFC and the jobs identified by the VE, the ALJ did not err in failing to resolve this conflict. The court finds the ALJ's Step Five finding is supported by substantial evidence.

2.    Moderate limitations of CPP in Plaintiff's RFC

Plaintiff argues the ALJ failed to explain how Plaintiff's moderate limitations in CPP did not result in restrictions on Plaintiff's ability to function for an eight-hour workday/forty-hour workweek. ECF No. 18 at 6–11.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 416.945(a)(3) and (4). Social Security Ruling 96–8p requires the RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

15

Plaintiff argues an RFC that limits a claimant to simple, routine tasks, unskilled work, and normal work breaks does not account for a claimant's time off task or limitations in CPP. ECF No. 18 at 6–8. Plaintiff argues that a review of the ALJ's function-by-function analysis establishes that the ALJ failed to explain how he has accounted for Plaintiff's moderate limitations in concentration, persistence, and pace. *Id*. at 9–11.

The Commissioner contends the ALJ properly accounted for Plaintiff's moderate limitations in CPP when he limited Plaintiff to performing tasks in two-hour increments at no more than a GED reasoning level of 2 and simple work-related decisions. ECF No. 20 at 8–10.

In response, Plaintiff reiterates her original arguments and contends the ALJ failed to provide an explicit conclusion about how Plaintiff's moderate limitations in CPP affected Plaintiff's ability to perform job-related tasks for a full workday. ECF No. 21.

In *Mascio*, the Fourth Circuit agreed with other circuits that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court determined that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In *Shinaberry v. Saul* the Fourth Circuit observed that *Mascio* "[does] not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d 113, 121 (4th Cir. 2020). The court upheld the ALJ's RFC because "the ALJ's findings and the mental limitation included in the RFC are sufficiently explained and supported by substantial evidence in the record." *Id.* at 121–22.

At Step Three of his decision, the ALJ considered whether Plaintiff's mental impairments met or medically equaled the Paragraph "B" criteria of Listings 12.04 and 12.06. The ALJ specifically noted his RFC assessment reflected the degree of limitation he found in the Paragraph B mental functional analysis. Tr. 18. The ALJ also noted in making the assessment he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and also considered "medical opinion(s) and prior administrative medical finding(s) opinion evidence" in accordance with the regulations. *Id.*

The ALJ determined Plaintiff had moderate limitations in CPP. Tr. 17. The ALJ referenced Plaintiff's hearing testimony, consultive examination reports, and Plaintiff's medical records and explained:

> For this criterion, the claimant has moderate limitations. The claimant contended that she has limitations in concentrating generally, reading, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule. On the other hand, the claimant said that she is also able to prepare meals, watch TV, manage funds, and handle her own medical care. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention. She was able to attend to and answer questions appropriately at the hearing. The claimant has moderate limitations in this domain.

Tr. 17. The ALJ  then included the following  provisions in the RFC assessment explaining, "[Plaintiff] can sustain concentration, persistence, and pace sufficient to perform simple, routine tasks in two hour increments at no more than a GED reasoning level of 2. She is able to perform simple work-related decisions." *Id.*

In his RFC narrative, the ALJ summarized Plaintiff's allegations regarding her physical and mental health, her educational history of special education, her struggles with math and reading, and her activities of daily living ("ADLs"). Tr. 19. The ALJ explained the medical

evidence was consistent with the RFC and the evidence did not reflect the level of functional restriction asserted by Plaintiff. *Id.*

Concerning Plaintiff's mental impairments, the ALJ discussed a consultative exam of Ernest Arnold, M.D. on October 19, 2019, citing Exhibit 5F. Tr. 20. The ALJ noted Plaintiff reported to memory and learning disabilities and reading and writing problems. *Id.* Dr. Arnold found Plaintiff to be "fully oriented, her thought process was intact, her math skills were poor but she could spell "fish" forward and backward and her recall was intact." *Id.* Plaintiff was assessed with a probable learning disability. *Id.*

The ALJ also discussed Plaintiff's history of a reading disability and anxiety. Tr. 21. The ALJ noted Plaintiff had a consultative examination with Dr. Thompson, Ph.D. on September 8, 2010, citing to Exhibit 10F. *Id.* The ALJ noted Plaintiff was

> observed to be cooperative with normal psychomotor activity level and good eye contact. On exam, she had a slightly dysphoric mood with some underlying anxiety and her affect was reserved until rapport was established and then was full range. She did not listen well and there was mild difficulty with detailed instructions although basic instructions and the spoken word were easily understood. She was alert and fully oriented, her judgment and insight were good, her memory was intact, her cognitive spontaneity was adequate, and her thought process and content were intact. Testing revealed a full scale IQ of 74 . . . On the reading subtest, she scored a reading grade equivalency of third grade . . . She was diagnosed with a mild reading disability with learning disorder, not otherwise specified, and mild anxiety, secondary to situational stressors and she was noted to function in the borderline range of intelligence.

*Id.*

The ALJ reported Plaintiff's mental impairments were treated conservatively. Tr. 22. The ALJ referenced Plaintiff's history of special education and limited education but observed that Plaintiff's "behavior, mood, affect and judgment have been noted as normal in the records." *Id.* The ALJ indicated records reflected Plaintiff had a history of anxiety but "she has not received

any ongoing treatment for same and  she has not received any formal mental health treatment." *Id.*

The ALJ noted Plaintiff's testimony of her limited ability in reading, writing, and math, and

explained he considered Plaintiff's full scale IQ of 74 and her 3rd grade reading level. *Id.*  The

ALJ concluded

> Taking into consideration her anxiety with her reading disability associated with a
> learning disorder, her subjective complaints, and her objective findings, this is
> consistent with a limitation to simple routine tasks with a GED reasoning level of
> 2 with simple, work-related decisions, as consistent with moderate limitations in
> understanding, remembering and applying information and concentration,
> persistence and pace. Further limitations are not supported by the record.

*Id.*

The ALJ stated Plaintiff's reported ADLs included Plaintiff's ability to care for herself,

live independently, prepare her own meals, do some household chores, go shopping in stores,

watch television, and care for her blind brother and sick mother. Tr. 23. The ALJ explained it was

difficult to attribute the degree of limitation  alleged by Plaintiff in her ADLs to Plaintiff's medical

condition "in view of the relatively benign medical evidence and other factors discussed in this

decision." *Id.* The ALJ stated "evidence suggests an inference that the claimant may have

overstated the impact of her medically determinable impairments." *Id.* The ALJ found Plaintiff

"possesses the ability to perform the physical and mental activities necessary  to perform the above

residual functional capacity." *Id.*

Here the ALJ gave little probative value to the October 9, 2019 consultative examination,

by Dr. Arnold, in which  Dr. Arnold opined Plaintiff's frequency in seizures would

> increase her risk for falls and injury, making work at heights or in hazardous
> environments inadvisable, increase the probability of absenteeism and would be
> expected to negatively impact job performance and completion, her neuropathy
> limits abilities to grip and grasp, her low back pain limits her abilities for standing,
> walking, lifting and bending, her left arm pain limits abilities for overhead and
> forward work with the left arm, and her memory problems may affect job

> performance, completion and performance of more complex tasks (Exhibit 5F, pp.
> 7-8).

*Id.* The ALJ found the opinion to be vague and speculative concerning Plaintiff's memory

problems and risk of falls, injury, and absenteeism  due to frequency of her seizure activity noting

Plaintiff testified she had not had a seizure in over a year. *Id*.

The ALJ also considered the September 8, 2010 opinion of  consultative examiner Dr.

Thompson, citing to Exhibit 10F. *Id.* Dr. Thompson opined Plaintiff's physical complaints and

seizures, along with her situational stressors, would cause Plaintiff

> difficulty maintaining any pace and persistence in a typical work environment as it
> appears her family is very dependent on her and being away from home probably
> would create more psychological turmoil within her that would create difficulty
> being able to show up on the job on a daily basis and maintain concentration and
> attention.

Tr. 23–24. The ALJ found Dr. Thompson's opinion persuasive in determining Plaintiff would

have

> limitations in concentration, persistence and pace and understanding, remembering
> and applying information, as this was supported by evaluation showing underlying
> anxiety and testing showing an IQ of 74 and mild reading disability associated with
> a learning disability, which is consistent with the claimant's history of special
> education and limited education.

Tr. 24.  However, the ALJ found the overall persuasiveness of Dr. Thompson's opinion was

reduced as his ultimate conclusions were no longer supported by Plaintiff's current living situation

as she lives alone, nor was the opinion supported by her treatment records which showed a lack of

mental health treatment for her anxiety and the absence of seizure activity for over a year. *Id.*

The ALJ further relied on State agency opinions, noting SSR 17-2p's requirements,

explaining he found  the medical consultants conclusions to be generally persuasive. *Id.* The ALJ

stated:

> Social Security Ruling 17-2p indicates that I must look to the State Agency determinations before making a decision. Based on the medical evidence discussed above, I find the conclusions reached by the State Disability Determination Services (DDS) medical consultants that the claimant is 'not disabled' to be generally persuasive . . . Specifically, DDS determined that the claimant was limited to unskilled light work. Although they based these findings on the determination of different severe impairments, the ultimate outcome is nonetheless persuasive as it is consistent with diagnostic tests showing spondylosis of the cervical and lumbar spine as well as objective exams showing some decreased motion in the neck and right hip as well as an antalgic gait but with normal tandem, heel and toe walking and full strength in the upper and lower extremities. I added additional limitations to account for reduced limitation in the left shoulder. A limitation to simple, routine work is consistent with the claimant's history of special education and reading disability as well as anxiety, but accounts for lack of current mental health treatment. Overall, the limitation to simple, light work is consistent with the claimant's conservative treatment. Based on my careful review of the record, including medical evidence subsequent to the date of these opinions, I have determined the claimant to be limited to unskilled, light work. There is nothing in the record indicating the claimant has greater limitations than those accommodated by the residual functional capacity.

*Id.*

The court finds the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace. Courts in this district have held that an ALJ can adequately address a claimant's ability to stay on task by limiting the length of time that the claimant can concentrate, persist, and work at pace to 2–hour periods in an 8–hour day. *Merriweather v. Acting Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-00421-RBH, 2019 WL 3282716, at *5 (D.S.C. July 22, 2019) ("A finding that a claimant with a moderate impairment with respect to concentration and pace is not inconsistent with a finding that he could keep pace in two hour segments during the work day"); *Sisco v. Comm'r of Soc. Sec. Admin.*, No. CV 9:17-3076-TMC, 2019 WL 396605, at *3 (D.S.C. Jan. 31, 2019) (holding that the "ALJ properly and adequately accommodated Sisco's moderate limitation in concentration, persistence, and pace by finding that she has the ability to concentrate and persist in the performance of detailed instructions and tasks for at least two hours

at a time, but not on higher level tasks."); *Falls v. Colvin*, No. 8:14-CV-00195-RBH, 2015 WL 5797751, at *7 (D.S.C. Sept. 29, 2015) (finding that remand was not required because the "ALJ noted Plaintiff's mental limitations but found that the Plaintiff could 'concentrate, persist and work at pace to do simple, routine, repetitive work at 1–2 step instructions for extended periods say 2-hour periods in an 8-hour day.'"). As to Plaintiff's arguments regarding a proper function-by-function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. Because the ALJ's discussion of the record allows the court to meaningfully review his RFC assessment, remand is not necessary.

In light of the foregoing, the court finds the ALJ adequately evaluated Plaintiff's moderate difficulties in concentration, persistence, or pace and that substantial evidence supports the RFC assessment.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Kaymani D. West

March 17, 2022                                        Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge